NORWOOD-WHITE COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102069. Promulgated November 7, 1941.

*A. F. Schaetzle, Esq.*, and *C. P. M. Allen, C. P. A.*, for the petitioner. *William V. Crosswhite, Esq.*, for the respondent.

---

OPINION.

ARNOLD: The issue presented is controlled by section 501 of the Revenue Act of 1936, the pertinent portions of which are set forth in the margin.[1] The tax imposed by section 501 (a) was designed to reach

---

[1] SEC. 501. TAX ON NET INCOME FROM CERTAIN SOURCES.

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

(1) A tax equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not

net incomes unjustly derived from excise taxes passed on to others but not paid to the Government. Section 501 (a) deals with three kinds of unjust enrichment (1) excise taxes shifted to vendees but not paid, (2) reimbursement by vendors where tax was in turn shifted to vendees, and (3) refunds or credits by the Government where tax had been shifted to others. This taxpayer clearly falls within the first classi-

paid which is attributable to shifting to others to any extent the burden of such Federal excise tax and which does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such Federal excise tax was imposed.

\* \* \* \* \* \* \*

(e) For the purposes of subsection (a) (1), (2), and (3), the extent to which the taxpayer shifted to others the burden of a Federal excise tax shall be presumed to be an amount computed as follows :

(1) From the selling price of the articles there shall be deducted the sum of (A) the cost of such articles plus (B) the average margin with respect to the quantity involved ; or

(2) If the taxpayer so elects by filing his return on such basis, from the aggregate selling price of all articles with respect to which such Federal excise tax was imposed and which were sold by him during the taxable year (computed without deduction of reimbursement to purchasers with respect to such Federal excise tax) there shall be deducted the aggregate cost of such articles, and the difference shall be reduced to a margin per unit in terms of the basis on which the Federal excise tax was imposed. The excess of such margin per unit over the average margin (computed for the same unit) shall be multiplied by the number of such units represented by the articles with respect to which the computation is being made ; but \* \* \*

\* \* \* \* \* \* \*

(f) As used in this section—

(1) The term "margin" means the difference between the selling price of articles and the cost thereof, and the term "average margin" means the average difference between the selling price and the cost of similar articles sold by the taxpayer during his six taxable years preceding the initial imposition of the Federal excise tax in question, except that if during any part of such six-year period the taxpayer was not in business, or if his records for any part of such period are so inadequate as not to furnish satisfactory data, the average margin of the taxpayer for such part of such period shall, when necessary for a fair comparison, be deemed to be the average margin, as determined by the Commissioner, of representative concerns engaged in a similar business and similarly circumstanced.

(2) The term "cost" means, in the case of articles manufactured or produced by the taxpayer, the cost to the taxpayer of materials entering into the articles ; \* \* \*

\* \* \* \* \* \* \*

(i) Either the taxpayer or the Commissioner may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted to others the burden of the Federal excise tax. Such proof may include, but shall not be limited to :

(1) Proof that the change or lack of change in the margin was due to changes in factors other than the tax. Such factors shall include any clearly shown change (A) in the type or grade of article or materials, or (B) in costs of production. If the taxpayer asserts that the burden of the tax was borne by him while the burden of any other increased cost was shifted to others, the Commissioner shall determine, from the respective effective dates of the tax and of the other increase in cost as compared with the date of the change in margin, and from the general experience of the industry, whether the tax or the increase in other cost was shifted to others. If the Commissioner determines that the change in margin was due in part to the tax and in part to the increase in other cost, he shall apportion the change in margin between them.

(2) Proof that the taxpayer modified contracts of sale, or adopted a new contract of sale, to reflect the initiation, termination, or change in amount of the Federal excise tax, or at any such time changed the sale price of the article (including the effect of a change in size, package, discount terms, or any other merchandising practice) by substantially the amount of the tax or change therein, or at any time billed the tax as a separate item to any vendee or indicated by any writing that the sale price included the amount of the tax, or contracted to refund any part of the sale price in the event of recovery of the tax or decision of its invalidity ; but the taxpayer may establish that such acts were caused by factors other than the tax, or that they do not represent his practice during the period in which the articles in question were sold.

\* \* \* \* \* \* \*

fication as it received no reimbursements of excise taxes from its vendors, and no refunds or credits from the Government.

The comparative table of petitioner's operations for 1935 and for the six years prior thereto shows that petitioner's 1935 margin increased over its six-year average margin by $0.09386 per ton. Accordingly, under section 501 (e) a presumption arises that petitioner shifted the burden of the Bituminous Coal Conservation Act tax to its customers. However, section 501 (i) permits petitioner to rebut the presumption by proof of the actual extent to which it shifted to others the burden of the tax.

Petitioner's proof to rebut the presumption consists of a showing that its sole price increase during the taxable year was to offset an increase in wages granted to coal miners. Both the wage increase and the price increase became effective October 1, 1935. The proof shows that petitioner's price increase amounted to $0.07683 per ton, while its wage increase or additional labor costs amounted to $0.08715 per ton. In other words petitioner's operations for 1935 would have shown a larger profit if both increases were eliminated from consideration. Petitioner's witnesses testified unequivocally that the burden of the tax was not shifted and that the price increase was for the purpose of partially compensating petitioner for additional labor costs. Their testimony is uncontradicted, and must be considered together with the other proof offered by petitioner.

In our opinion the petitioner has established that the burden of the tax was not shifted to its vendees. The evidence shows that neither the imposition of the excise tax nor its invalidation affected petitioner's billings, its contracts or its dealings with its customers. Respondent's contention that the price increase of October 1, 1935, made due allowance for the tax to be imposed on November 1, 1935, is overcome by the obvious fact that the price increase of that date did not even cover increased production costs, i. e., sales increased after October 1, 1935, by $14,482.06; but labor costs increased after October 1, 1935, by $16,428.19. Under such circumstances we do not believe it can reasonably be said that a portion of the price increase of October 1, 1935, represented the shifting of the burden of the excise tax to petitioner's vendees. The price increase was to partially compensate petitioner for increased labor costs. Petitioner was not, therefore, unjustly enriched within the meaning of section 501, Revenue Act of 1936.

We are not persuaded that *Honorbilt Products, Inc.* v. *Commissioner*, 119 Fed. (2d) 797, cited and relied on by respondent, controls our decision. In that case the Circuit Court of Appeals for the Third Circuit affirmed a decision of the Processing Tax Board of Review, which found that the taxpayer had shifted the burden of the tax. The court held that substantial evidence existed to support

the findings of the Board of Review. However, the court carefully pointed out that "There is nothing in the record to show that the increase in price was due to any increase in the cost of raw materials, of labor or of manufacture generally." Here, we have found as a fact that the price increase was due to an increase in labor costs. To the same effect is *Poindexter & Sons Merchandise Co.* v. *United States*, 40 Fed. Supp. 787; *Ney* v. *United States*, 33 Fed. Supp. 554; *Hutzler Brothers Co.* v. *United States*, 33 Fed. Supp. 801.

In *Vennell* v. *United States*, 36 Fed. Supp. 646, and *C. M. McClung & Co.* v. *United States*, 35 Fed. Supp. 464, the taxpayers were held liable for a failure of proof. In *E. W. Stockton*, 44 B. T. A. 514, the proof established that the taxpayer shifted part of the tax and bore a portion thereof and the Board allocated the reimbursements of taxpayer's vendors accordingly.

The authorities cited establish that the unjust enrichment tax imposed by section 501 (a) will not apply if the taxpayer's proof demonstrates that it bore the burden of the excise tax and did not shift that burden to its vendees. Since the proof here demonstrates that petitioner bore the burden of the tax,

*Decision will be entered for the petitioner.*